UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LYNDON B. JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15330** |
| **SANDI McCAIN, WARDEN** | **SECTION: "R"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Lyndon B. Johnson, is a state prisoner incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana. On January 27, 2009, he pleaded guilty to the following offenses under Louisiana law: two counts of possession with the intent to distribute cocaine; one count of possession of cocaine; and one count of second-offense possession of marijuana. On that same date, he also pleaded guilty to being a second offender. Also on that same date, he was sentenced to the following terms of imprisonment: on the first count of possession with intent to distribute cocaine, twenty-five years without benefit of probation or

suspension of sentence;[1] on the second count of possession with intent to distribute cocaine, twenty-five years without benefit of parole, probation, or suspension of sentence; on the possession of cocaine conviction, five years; and on the marijuana conviction, five years. It was ordered that the sentences be served concurrently.[2] After he was granted an out of time appeal,[3] the Louisiana Fifth Circuit Court of Appeal affirmed his convictions, amended his sentence on the second count of possession with intent to distribute cocaine to deny the benefit of parole, probation, or suspension of sentence for only the first two years, and affirmed his sentences as amended.[4] The Louisiana Supreme Court then denied his related writ application on June 25, 2010.[5]

On November 1, 2011, petitioner filed an application for post-conviction relief with the state district court.[6] That application was denied on April 3, 2012.[7] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 1, 2012,[8] and by the Louisiana Supreme Court on February 8, 2013.[9]

On March 2, 2014, petitioner filed with the state district court a pleading titled "Motion to Reopen Post-Conviction Relief Based Upon Additional Newly Discovered Evidence in the Interest

---

[1] This was an enhanced sentenced based on his status as a second offender.
[2] State Rec., Vol. 1 of 6, transcript of January 27, 2009; State Rec., Vol. 1 of 6, minute entry dated January 27, 2009; State Rec., Vol. 1 of 6, guilty plea forms.
[3] State Rec., Vol. 1 of 6, Order dated May 6, 2009.
[4] State v. Johnson, 28 So.3d 1125 (La. App. 5th Cir. 2009); State Rec., Vol. 2 of 6.
[5] State v. Johnson, 38 So.3d 355 (La. 2010); State Rec., Vol. 2 of 6.
[6] State Rec., Vol. 2 of 6. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the applications were obviously placed in the mail no earlier than the date they were signed.
[7] State Rec., Vol. 3 of 6, Order dated April 3, 2012.
[8] State v. Johnson, No. 12-KH-430 (La. App. 5th Cir. June 1, 2012); State Rec., Vol. 3 of 6.
[9] State ex rel. Johnson v. State, 108 So.3d 83 (La. 2013); State Rec., Vol. 3 of 6.

of Justice."[10]  That motion was denied on July 16, 2014.[11]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on October 1, 2014,[12] and by the Louisiana Supreme Court on September 18, 2015.[13]

On September 16, 2016, petitioner filed the instant federal application seeking habeas corpus relief.[14]  The state has filed a response arguing that the application is untimely.[15]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") included a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provided:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[10] State Rec., Vol. 4 of 6.
[11] State Rec., Vol. 4 of 6, Order dated July 16, 2014.
[12] State v. Johnson, No. 14-KH-647 (La. App. 5th Cir. Oct. 1, 2014); State Rec., Vol. 4 of 6.
[13] State ex rel. Johnson v. State, 178 So.3d 142 (La. 2015); State Rec., Vol. 4 of 6.
[14] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that he placed his federal application in the prison mailing system on September 16, 2016.  Rec. Doc. 1, p. 15.
[15] Rec. Doc. 7.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner argues that the commencement of the limitations period in the instant case was delayed under § 2244(d)(1)(D).[16] However, even if the Court assumes for the purposes of this decision that Subsection D is indeed the applicable subsection to be used in calculating the statute of limitations, petitioner's application is untimely under that subsection for the following reasons.

As noted, under Subsection D, the statute of limitations does not commence until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). In this federal application, petitioner claims that he is entitled to relief because Sergeant Shane Klein made knowing and intentional false statements in an affidavit in order to obtain the search warrant in the instant case. Specifically, in his affidavit, Klein stated that a confidential informant, acting in concert with law enforcement officers, purchased cocaine from petitioner using marked currency supplied by the officers.[17] Petitioner contends that was a lie. He argues that Kelly Plaisance was the confidential informant referenced in Klein's affidavit and that she did not in fact make the purported purchase. To support his claim, petitioner secured an affidavit from Plaisance. In that affidavit, which was executed on August 2, 2011, Plaisance stated: "I never made a purchase from Mr. Johnson or anyone at his residence …. I gave the detectives back all of the currency that I was given to make

---

[16] Rec. Doc. 1, pp. 13-14.
[17] Rec. Doc. 1-2, pp. 6-8.

4

a purchase, none of it was used."[18] On July 2, 2013, Plaisance executed another affidavit in which she gave a more detailed account of the sequence of events and again stated that she did not purchase drugs as falsely recounted in Klein's affidavit.[19]

Therefore, the "factual predicate" of petitioner's claims is that Klein purportedly lied in his affidavit, and, for the purposes of Subsection D, the critical issue is when petitioner could have discovered that lie through the exercise of due diligence. However, because this Court has no way of ascertaining with certainty the earliest point at which petitioner could have made that discovery, and because his federal application is untimely even if Court assumes that he could not have learned of the lie before the date on which he actually did learn of it, the Court will simply make that assumption for the purposes of this decision. According to petitioner, he learned of the lie on **May 1, 2011**. In his memorandum in support of his federal application, he states:

> In March of 2011, a Ms. Destiny Austin sent me a letter with a Ms. Kelly Plaisance address in Tallulah, I wrote her, and on May 1, 2011, I received a letter from her. I explained to [sic] what I was in jail for and she informed me that she was in fact the confidential informant used in my case. She then proceeded to explain to me the details surrounding the events that took place on February 7, 2008. I asked her to send me a affidavit with her statement of those facts.[20]

---

[18] Rec. Doc. 1-2, p. 3.
[19] Rec. Doc. 1-3, pp. 51-55.
[20] Rec. Doc. 1-3, pp. 60-61. Out of an abundance of caution, the undersigned notes that the limitations period under Subsection D was **not** further delayed while he gathered the evidence, such as Plaisance's affidavit, in support of his claim. Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) (rejecting an inmate's argument that the limitations period was extended while he sought an affidavit, explaining that the inmate was "confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim"); Smith v. Cain, Civ. Action No. 07-2727, 2010 WL 2605814, at *6 (E.D. La. May 28, 2010), adopted, 2010 WL 2605380 (E.D. La. June 21, 2010); accord Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("[I]t is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits."); Tate v. Pierson, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) (same), aff'd, 52 Fed. App'x 302 (7th Cir. 2002).

Therefore, under Subsection D, the statute of limitations in this case commenced no later than May 1, 2011, and then expired on May 1, 2012, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After one hundred eighty-three (183) days elapsed, petitioner tolled the federal limitations period in this case by filing a post-conviction application with the state district court on November 1, 2011. Although that application was denied on April 3, 2012, tolling continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). For the purposes of this decision, the Court will assume that statutory tolling therefore continued until February 8, 2013, the date on which the Louisiana Supreme Court denied petitioner's related writ application.[21]

---

[21] State ex rel. Johnson v. State, 108 So.3d 83 (La. 2013); State Rec., Vol. 3 of 6. A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).
  Further, the Court notes that the state contends in its response that it "appears" petitioner's related writ applications were untimely. Rec. Doc. 7, p. 7 n.8. However, the state offers no evidence on that point and instead assumes that tolling continued until the Louisiana Supreme Court denied relief on February 8, 2013. The Court will make that same assumption, because petitioner's federal application is untimely even if he is given the benefit of the doubt on this issue.

When the limitations period then resumed running at that point, petitioner had one hundred eighty-two (182) days remaining. Accordingly, he had only until August 9, 2013, either to again toll the limitations period or to file his federal application.

Petitioner filed no other applications for "State post-conviction or other collateral review" on or before August 9, 2013. Therefore, he clearly is not entitled to further statutory tolling.[22]

The Court must also consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the

---

[22] The Court notes that petitioner subsequently filed his motion to reopen the post-conviction proceedings on March 2, 2014. However, that filing obviously had no effect on the timeliness of petitioner's federal application because it was filed *after* the federal limitations period had already expired. Motions or applications filed after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

7

impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). That said, the Supreme Court took care to note: "We caution, however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

A petitioner therefore faces a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner has presented no new evidence of the type or caliber referenced in Schlup.[23] Accordingly, he has not met "the threshold requirement" for McQuiggin to apply. McQuiggin, 133 S. Ct. at 1928. As a result, the "actual innocence" exception does not aid him.

---

[23] On the contrary, petitioner presents no evidence whatsoever concerning whether or not he was actually guilty of the crimes of which he stands convicted. Although he presents Plaisance's affidavits, those affidavits concern only the purported transaction on February 7, 2008 – the event which led Sergeant Klein to seek the search warrant. **Importantly, however, petitioner was neither charged with nor convicted of distributing drugs to Plaisance in that transaction.** Rather, his convictions stem from the fact that, *after* Klein procured the search warrant, petitioner was later found to be in possession of *other* drugs on February 15 and April 1, 2008. See State Rec., Vol. 1 of 6, transcript of January 27, 2009, pp. 18-20; State Rec., Vol. 1 of 6, bill of information. Obviously, even if petitioner did not distribute drugs to Plaisance in the prior transaction, that does not constitute evidence that he was innocent of the later possession of the drugs on which his convictions are based.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than August 9, 2013, in order to be timely.  His federal application was not filed until September 16, 2016, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Lyndon B. Johnson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this twenty-sixth day of June, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.